IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Estate of Mary Ann Yon Callaham, by Linda Foster and Charlie Yon, Personal Representatives; Kimberly Callaham; Timothy Callaham; and Linda Foster,<br><br>Plaintiffs,<br><br>vs.<br><br>United States of America,<br><br>Defendant. | C/A No. 3:13-cv-0905-JFA<br><br><br><br><br><br>**ORDER ON<br>MOTION TO DISMISS** |

## I.   INTRODUCTION AND PROCEDURAL HISTORY

This action involves alleged medical malpractice and other intentional torts arising out of the death of Mary Ann Yon Callaham on October 7, 2008. Notably, these claims have been before this court once before, in an action filed on February 29, 2012. *See* C/A No. 3:12-cv-579. The court dismissed the previous action without prejudice on May 21, 2012, finding that Plaintiffs had failed to exhaust their administrative remedies, a prerequisite to maintaining an action under the Federal Tort Claims Act (FTCA). In that regard, Plaintiffs had presented three administrative claims to the Department of Health and Human Services (DHHS) on February 3, 2012, prior to filing that suit. However, DHHS did not deny these claims until October 12, 2012.[1] Once they exhausted their administrative remedies, Plaintiffs filed the instant action on April 4, 2013. Plaintiffs' Complaint sets forth four causes of action, including wrongful death, survival, defamation (slander), and misrepresentation.

Defendant has moved to dismiss this action pursuant to FED. R. CIV. P. 12(b)(1), primarily on the ground that Plaintiffs did not present their claims within the FTCA's two-year

---

[1] DHHS denied Plaintiffs' claims for failure to file their tort claims within two years of their causes of action having accrued. *See* ECF No. 6-6.

1

statute of limitations. ECF No. 6-1. Defendant also argues that, in any event, the United States did not waive its sovereign immunity for claims arising out of libel, slander, misrepresentation, and deceit, and thus this court lacks jurisdiction over Plaintiffs' third and fourth causes of action. In their Response to Defendant's motion to dismiss, Plaintiffs move to voluntarily dismiss their third cause of action for slander. ECF No. 7 at 6.

As discussed in detail below, the court agrees with Defendant that it lacks subject matter jurisdiction over this action.

**II.    FACTS**

Mary Ann Yon Callaham was a patient of Eau Claire Cooperative Health Centers, Inc., a federally deemed community health center under the Federally Supported Health Centers Assistance Act, 42 U.S.C. § 233(g)–(n), and in particular of Sharon Aldrich, M.D., an employee of Eau Claire Cooperative Health Centers.[2] In September of 2008, Dr. Aldrich examined and treated Ms. Callaham for complaints of pelvic pain and scheduled Ms. Callaham for surgery. On September 30, 2008, Dr. Aldrich performed surgery on Ms. Callaham. Ms. Callaham recuperated in the hospital and was scheduled to be discharged on October 3, 2008. During the course of her hospital stay, Ms. Callaham was noted to have an elevated hematology profile and consistently complained of abdominal pain. On October 3, 2008, Dr. Aldrich determined that Ms. Callaham was not well enough to be discharged and extended Ms. Callaham's stay for another day. On the morning of October 4, 2008, a note by the attending nurse described Ms. Callaham's condition as: "Wound Surrounding Skin-Comment: Moisture Noted In Skin Fold of Lower Abdomen. Foul Odor detected." Nonetheless, Ms. Callaham was discharged that afternoon without further examination by Dr. Aldrich or any other physician.

---

[2] Plaintiffs Kimberly Callaham, Timothy Callaham, and Linda Foster are relatives of Ms. Callaham. Linda Foster and Charlie Yon are the Personal Reprsentatives of the estate of Ms. Callaham, which is also a party Plaintiff.

During post-op recovery, a family member concerned with Ms. Callaham's home recovery contacted Dr. Aldrich by phone. This family member advised Dr. Aldrich that Ms. Callaham smelled of an odor that was extremely nauseous, could not eat, was vomiting, and had not had a bowel movement. Dr. Aldrich returned the family member's call and referred to the complaints as normal recovery symptoms. However, Dr. Aldrich neither instructed nor ordered this family member to return Ms. Callaham to the hospital. Then, on October 7, 2008, Ms. Callaham returned to the hospital emergency room, where she died at approximately 11:40 p.m.

The Report of Postmortem Examination for Ms. Callaham, requested by Richland County Coroner Gary Watts and signed out by Dr. Clay Nichols on October 10, 2008, notes peritonitis, breakdown of the wound, and death following surgery. ECF No. 8-3. A Coroner's report dated January 9, 2009 lists Ms. Callaham's cause of death as cardiac arrest due to sepsis. ECF No. 8-1. Additionally, the Amended Death Certificate for Ms. Callaham dated February 24, 2009, describes the cause of death as "cardiac arrest probable sepsis." ECF No. 8-2. The Richland County Coroner's office issued a "Final Report of Postmortem Examination" on January 11, 2011. This report concluded that Ms. Callaham died of sepsis due to peritonitis caused by a post-operative infection.

According to Plaintiffs, Dr. Aldrich misrepresented and/or confabulated her post-surgical account of her care of Ms. Callaham. For example, Plaintiffs allege that Dr. Aldrich misrepresented her care of Ms. Callaham in various post-mortem statements and entries in the record by omitting important details of Ms. Callaham's condition prior to and following her discharge from the hospital. Plaintiffs also allege that Dr. Aldrich confabulated a conversation with Ms. Callaham's sister, Linda Foster, wherein Dr. Aldrich claimed that she advised Ms. Foster to immediately take Ms. Callaham back to the hospital on October 5, 2008. Plaintiffs

allege that the import and intent of Dr. Aldrich's omissions and misstatements was to mislead her colleagues, other physicians treating Ms. Callaham, Coroner Watts, and Plaintiffs themselves regarding the circumstances surrounding Ms. Callaham's post-operative treatment and death. Likewise, Plaintiffs allege that Dr. Aldrich was attempting to conceal her negligence and forestall any legal action against her.

### III.     LEGAL STANDARD

#### A. Motion to Dismiss Under Rule 12(b)(1)

Defendant has moved to dismiss this action for lack of subject matter jurisdiction. The Court of Appeals for the Fourth Circuit recently discussed the proper legal framework for resolving a Rule 12(b)(1) motion to dismiss in *Kerns v. United States*, 585 F.3d 187 (4th Cir. 2009). There, the court of appeals explained that a defendant may challenge subject matter jurisdiction in one of two ways:

> First, the defendant may contend "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." When a defendant makes a facial challenge to subject matter jurisdiction, "the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." In that situation, the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction.
>
> In the alternative, the defendant can contend . . . "that the jurisdictional allegations of the complaint [are] not true." The plaintiff in this latter situation is afforded less procedural protection: If the defendant challenges the factual predicate of subject matter jurisdiction, "[a] trial court may then go beyond the allegations of the complaint *and in an evidentiary hearing* determine if there are facts to support the jurisdictional allegations," without converting the motion to a summary judgment proceeding. In that situation, the presumption of truthfulness normally accorded a complaint's allegations does not apply, and the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction.

*Id.* at 192 (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)) (internal citations omitted) (alterations and emphasis in original). When a defendant has made the second type of

challenge, in some circumstances the jurisdictional facts may be "inextricably intertwined" with those central to the merits of the plaintiff's cause of action. *Id.* at 193. If that is the case, "a presumption of truthfulness should attach to the plaintiff's allegations." *Id.* This is because

> the defendant has challenged not only the court's jurisdiction but also the existence of the plaintiff's cause of action. A trial court should then afford the plaintiff the procedural safeguards—such as discovery—that would apply were the plaintiff facing a direct attack on the merits. . . . Thus, when the jurisdictional facts and the facts central to a tort claim are inextricably intertwined, the trial court should ordinarily assume jurisdiction and proceed to the intertwined merits issues. As the Supreme Court has explained with respect to such situations, a trial court should dismiss under Rule 12(b)(1) only when the jurisdictional allegations are "clearly . . . immaterial, made solely for the purpose of obtaining jurisdiction or where such a claim is wholly unsubstantial and frivolous."

*Id.* (quoting *Bell v. Hood*, 327 U.S. 678, 682 (1946)) (internal citations omitted). In this situation, if the court cannot dismiss under Rule 12(b)(1) and must proceed to the intertwined merits issues, it is entitled to treat the Rule 12(b)(1) motion as a motion for summary judgment under Rule 56. *Id.* at 193 n.6.

### B. Accrual of Medical Malpractice Claims Under the FTCA

In its Rule 12(b)(1) motion, Defendant contends that the court should dismiss the entire action because Plaintiffs failed to file their tort claims within the FTCA's two-year statute of limitations, 28 U.S.C. § 2401(b). In this case, the resolution of this issue depends on the time at which Plaintiffs' claims accrued within the meaning of the FTCA. Although FTCA liability is determined "in accordance with the law of the place where the act or omission occurred," *id.* § 1346(b), federal law governs claim accrual under the FTCA. *Gould v. U.S. Dep't of Health & Human Servs.*, 905 F.2d 738, 741 (4th Cir. 1990) (en banc). The Fourth Circuit has stated that "a claim accrues within the meaning of § 2401(b) when the plaintiff knows or, in the exercise of due diligence, should have known both the existence and the cause of his injury." *Id.* at 742

(discussing *United States v. Kubrick*, 444 U.S. 111, 123–24 (1979)).  In this regard, "a claim will accrue even if the claimant does not know the precise medical reason for the injury, provided that he knows or should know that some aspect of the medical treatment caused the injury." *Hahn v. United States*, 313 F. App'x 582, 585 (4th Cir. 2008) (citing *Kerstetter v. United States*, 57 F.3d 362, 364–65 (4th Cir. 1995)).

### C.  Equitable Tolling

Notably, as discussed below, Plaintiffs also argue that, should the court find that their claims accrued more than two years before they presented their claims to DHHS, the court should equitably toll the FTCA's statute of limitations.  Their equitable tolling argument is based on Dr. Aldrich's alleged omissions and misrepresentations, which Plaintiffs argue Dr. Aldrich did to conceal her malpractice and, accordingly, the fact that they had a cause of action.

The parties disagree on whether equitable tolling of the FTCA's statute of limitations is permitted.  For example, Defendant emphasizes that the Fourth Circuit has stated that the FTCA statute of limitations is "jurisdictional," *see, e.g.*, *Kokotis v. United States Postal Service*, 223 F.3d 275, 278 (4th Cir. 2000), and thus Defendant argues that this forbids a court from even considering whether equitable considerations warrant extending the limitations period.  Plaintiffs point out that the Supreme Court recently reaffirmed the "rebuttable presumption" that "equitable tolling applicable to suits against private defendants should also apply to suits against the United States."  *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 137 (2008) (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95–96 (1990)) (internal quotation marks omitted).

Although the Fourth Circuit does not appear to have explicitly held that the FTCA statute of limitations is subject to equitable tolling, it has suggested that equitable considerations may

apply in an appropriate case. Defendant is correct that the Fourth Circuit has stated that the FTCA statute of limitations is "jurisdictional" and nonwaivable in a number of cases. However, in a review of the Fourth Circuit cases which mention the issue, although this court is aware of only one case where the court of appeals actually tolled the FTCA statute of limitations, *see Barrett v. United States*, 851 F.2d 356, 1988 WL 70416, at *1 (4th Cir. 1988), the Fourth Circuit has discussed whether to do so on a number of occasions. *See, e.g.*, *Zeno v. United States*, 451 F. App'x 268, 273 (4th Cir. 2011); *McKewin v. United States*, 7 F.3d 224, 1993 WL 389568, at *2 (4th Cir. Oct. 4, 1993); *Kelly v. United States*, 4 F.3d 985, 1993 WL 321581, at *2 n.* (4th Cir. Aug. 23, 1993); *Muth v. United States*, 1 F.3d 246, 251 (4th Cir. 1993). Moreover, in the same case Defendant relies on, the Fourth Circuit actually considered the issue of equitable tolling. *See Kokotis*, 223 F.3d at 280–81. Thus, it is this court's view that the Fourth Circuit would allow tolling the FTCA statute of limitations in an appropriate case.[3]

In this regard, the Fourth Circuit has set forth several guidelines for courts considering whether to equitably toll a statute of limitations. For example, the Fourth Circuit has stated that equitable tolling principles are appropriate only "where the defendant has wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action," *Kokotis*, 223 F.3d at 280–81 (quoting *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir. 1987)), and "such relief is appropriate only for the most deserving complainant," *Muth*, 1 F.3d at 251 (citation omitted). Importantly, to invoke this doctrine, Plaintiffs "must show that the 'defendant attempted to mislead [them] and that the plaintiff[s] reasonably relied on the misrepresentation

---

[3] The court notes that the Third Circuit, in an opinion subsequent to the Supreme Court's opinion in *John R. Sand & Gravel*, held that the FTCA's statute of limitations is subject to equitable tolling. *See Santos v. United States*, 559 F.3d 189, 194–97 (3d Cir. 2009). Additionally, at least one circuit court of appeal has recognized that there is no inconsistency between referring to compliance with a statute of limitations as "jurisdictional" while also applying the rule of equitable tolling. *T.L. v. United States*, 443 F.3d 956, 961 (8th Cir. 2006) (holding that equitable tolling applies in FTCA cases because Congress intended it to apply and that it is "one of the 'terms' of the government's consent to be sued" (citation omitted)).

by neglecting to file a timely charge.'" *Id.* (quoting *English*, 828 F.2d at 1049). Accordingly, equitable tolling is not appropriate where "the claimant failed to exercise due diligence in preserving his legal rights." *Irwin*, 498 U.S. at 96.

## IV. DISCUSSION

### A. Whether Dismissal Under Rule 12(b)(1) is Inappropriate

In this case, Defendant has made a factual challenge to the jurisdictional allegations in the Complaint. As explained above, when a defendant does so the general rule is that a "district court should assume jurisdiction and assess the merits of the claim when the relevant facts—for jurisdiction and merits purposes—are inextricably intertwined." *Kerns*, 585 F.3d at 198. Before turning to the issue of whether this court has subject matter jurisdiction, then, this court must assess whether the jurisdictional facts are so intertwined with the merits that dismissal under Rule 12(b)(1) would be inappropriate. As discussed below, the court concludes that "intertwinement" is not an impediment to its consideration of dismissal under Rule 12(b)(1) in this case.

The court first determines the facts relevant to jurisdiction. In this case, Defendant has moved under Rule 12(b)(1) based on the FTCA's two-year statute of limitations, which provides that "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues . . . ." 28 U.S.C. § 2401(b). Defendant's argument is that Plaintiffs' claims had accrued more than two years before they filed their administrative claim with the DHHS, which occurred on February 3, 2012, more than three years following Ms. Callaham's death. Thus, the relevant facts for the purpose of subject matter jurisdiction are the facts which relate to the time at which Plaintiffs' claim accrued. Such facts include those regarding the various reports issued by the Coroner's

office in 2008, 2009, and 2011 and Ms. Callaham's Amended Death Certificate issued in 2009. Such facts would also include Plaintiffs' allegations regarding Dr. Aldrich's alleged misrepresentations in the medical record and in various statements she made following Ms. Callaham's death. These facts are related to jurisdiction because Plaintiffs argue that Dr. Aldrich made these misrepresentations in part to mislead them as to the person(s) responsible for and the cause of Ms. Callaham's death, thus warranting equitable tolling of the statute of limitations.

Next, the court considers whether these jurisdictional facts are "inextricably intertwined" with the merits of Plaintiffs' FTCA claims. As noted above, Plaintiffs are pursuing three of their four original causes of action: wrongful death, survivorship, and misrepresentation. The jurisdictional facts identified above are arguably related to Plaintiffs' claims of wrongful death and survivorship, in that they go to show the cause of Ms. Callaham's death. However, the test for intertwinement, as the Fourth Circuit stated in *Kerns*, is whether resolving the jurisdictional issue would also be "determinative" of "the underlying merits of an FTCA claim." *Kerns*, 585 U.S. at 195–96. The question of when Plaintiffs' claims accrued is answered by determining the time at which Plaintiffs knew or should have known both the existence and cause of their injury. This answer is not determinative of any element of wrongful death or survivorship. Thus, the jurisdictional issue is not intertwined with the merits of Plaintiffs' first two claims.

However, determining when Plaintiffs' claims accrued may be determinative of one or more elements of Plaintiffs' claim for misrepresentation. For example, the merits of this claim require Plaintiffs to show reliance. But when determining the jurisdictional issue, the court must ask whether Dr. Aldrich's alleged misrepresentations caused Plaintiffs to present their claims to DHHS later than they otherwise would have. In other words, determining the time of claim accrual may be determinative of the reliance element of Plaintiffs' misrepresentation claim.

9

Consequently, dismissal under Rule 12(b)(1) would at first appear to be improper. However, there is a final threshold issue the court must address before it can make that determination. Specifically, Defendant argues that it did not waive its sovereign immunity to Plaintiffs' claim for misrepresentation. If this is true, then the court would lack subject matter jurisdiction over Plaintiffs' claim for misrepresentation regardless of whether Plaintiffs presented their claims within the FTCA's statute of limitations. The court could then determine the jurisdictional issue of claim accrual without having to address the merits of one of Plaintiffs' claims. Said another way, intertwinement is only a potential issue with respect to the misrepresentation claim when the court is considering its jurisdiction under the statute of limitations; if the court lacks subject matter jurisdiction over the misrepresentation claim for a different reason, it is still proper to consider whether to dismiss the remaining claims under Rule 12(b)(1), and the court need not treat Defendant's motion as one for summary judgment.

In this regard, the FTCA includes several exclusions from its waiver of the sovereign immunity of the United States. The relevant statute states that the provisions of the FTCA "shall not apply to . . . [a]ny claim arising out of . . . libel, slander, misrepresentation, [or] deceit." 28 U.S.C. § 2680(h). The FTCA thus appears to clearly exclude Plaintiffs' fourth cause of action. Undeterred, Plaintiffs make the unexpected argument that their cause of action styled "misrepresentation" is not really a claim for misrepresentation, but rather a negligence claim which "ha[s] a basis separate from the actionable misrepresentation." ECF No. 7 at 11. Specifically, they point to this court's decision in their prior case, where, in denying Plaintiffs' request to remand their intentional tort claims, it found that the FTCA governs all of the claims asserted in the lawsuit. *See* C/A No. 3:12-cv-00579-JFA, ECF No. 29 at 6. Plaintiffs characterize this as a finding that Dr. Aldrich's alleged misrepresentations are not an intentional

tort, but a "Government tort." Accordingly, they contend that the FTCA does not exclude this claim from its waiver of sovereign immunity.

In support of this argument, Plaintiffs cite *Block v. Neal*, 460 U.S. 289 (1983), where the Supreme Court considered whether the FTCA's exclusion for misrepresentation claims barred respondent Neal's action. There, Neal had received from the Farmers Home Administration (FmHA) a loan for the construction of a prefabricated house, and "she alleged that defects discovered after she set up residence were partly attributable to the failure of FmHA employees properly to inspect and supervise the construction of her house." *Id.* at 290. The Supreme Court explained that "the essence of an action for misrepresentation, whether negligent or intentional, is the communication of misinformation on which the recipient relies." *Id.* at 296. Thus, § 2680(h) of the FTCA "relieves the Government of tort liability for pecuniary injuries which are wholly attributable to reliance on the Government's negligent misstatements." *Id.* at 297. However, "it does not bar negligence actions which focus not on the Government's failure to use due care in communicating information, but rather on the Government's breach of a different duty." *Id.* In this case, "FmHA's duty to use due care to ensure that the builder adhere to previously approved plans and cure all defects before completing construction is distinct from any duty to use due care in communicating information to respondent." *Id.* Therefore, the Supreme Court found that the FTCA did not exclude this claim. *Id.* at 298.

In this court's view, *Block* does not support Plaintiffs' argument, and Defendant has not waived its sovereign immunity for Plaintiffs' misrepresentation claim. Importantly, by Plaintiffs' own allegations, their claim plainly focuses on Defendant's failure to use due care in communicating information. For example, they state in their Complaint that Defendant had a "duty to Ms. Callaham's family . . . to provide accurate information" and that Defendant "owed a

11

duty of due care to see that she communicated truthfully to the Plaintiffs." Complaint, ¶¶ 40, 43. Further, Plaintiffs allege that the "acts and omissions mentioned were material and constituted false and misleading representations" and that the Plaintiffs "justifiably relied on the representations of the Defendant and suffered a pecuniary loss" therefrom. *Id.* at ¶¶ 41, 44. Other than referring to their claim as a "Government tort," Plaintiffs do not explain how their claim has a basis separate from the actionable misrepresentation. Rather, Plaintiffs' misrepresentation claim is exactly as labeled; it is quite obviously a claim for misrepresentation within the meaning of the FTCA.

Based on the above, this court lacks subject matter jurisdiction over Plaintiffs' misrepresentation claim under § 2680(h). Further, this court can decide the jurisdictional issue of claim accrual under the FTCA's statute of limitations without reaching the merits of Plaintiffs' claims for wrongful death and survival. Accordingly, intertwinement is not an issue which would preclude this court from dismissing the latter claims under Rule 12(b)(1).

### B. The FTCA's Statute of Limitations

Defendant argues that this court lacks subject matter jurisdiction over Plaintiffs' remaining claims for wrongful death and survival because Plaintiffs failed to present these claims to DHHS within two years of their having accrued. Ms. Callaham died on October 7, 2008, but Plaintiffs did not present these claims to DHHS until February 3, 2012, more than three years later. The Richland County Coroner's office did not issue a "Final" Postmortem report on Ms. Callaham (which concluded that she died of sepsis due to peritonitis caused by a post-operative infection) until January 11, 2011. Although the Coroner also issued reports in October of 2008 and January of 2009, and although the amended death certificate was issued in February of 2009, Plaintiffs contend that they neither knew nor should have known of both the

12

existence and cause of their injury until the January 2011 report. Thus, Plaintiffs argue that their claims were timely presented.

The court disagrees. Again, the standard for claim accrual is whether a claimant "knows or, in the exercise of due diligence, should have known both the existence and the cause of his injury." *Gould*, 905 F.2d at 742. Further, "a claim will accrue even if the claimant does not know the precise medical reason for the injury, provided that he knows or should know that some aspect of the medical treatment caused the injury." *Hahn*, 313 F. App'x at 585 (citing *Kerstetter*, 57 F.3d at 364–65). In this case, Plaintiffs knew or, in the exercise of due diligence, should have known the following. Ms. Callaham was discharged from the hospital on October 4, 2008, but she returned to the emergency room three days later, where she then died. According to their Complaint, at least one of Ms. Callaham's family members was aware of complications following surgery. In particular, "concerned with Ms. Callaham's home recovery," a family member advised Dr. Aldrich "that [Ms. Callaham] smelled of an odor that was extremely nauseous, that she could not eat, was vomiting and had not had a bowel movement." Complaint, ¶ 20(c).

In addition, a Report of Postmortem Examination for Ms. Callaham, requested by Coroner Watts and signed out by Dr. Clay Nichols on October 10, 2008, notes peritonitis, breakdown of the wound, and death following surgery. ECF No. 8-3. The Coroner's report, dated January 9, 2009, lists Ms. Callaham's cause of death as cardiac arrest due to sepsis. ECF No. 8-1. Additionally, the Amended Death Certificate for Ms. Callaham dated February 24, 2009, lists the cause of death as "cardiac arrest probable sepsis." ECF No. 8-2.

In sum, Plaintiffs knew that Ms. Callaham died shortly following surgery, which is at least some evidence that some aspect of the medical treatment caused her death. Moreover, at

least one family member knew that Ms. Callaham was having post-surgery complications. Furthermore, at the latest by February of 2009, the Plaintiffs were aware of or could have discovered additional evidence that Ms. Callaham's death was related to her medical treatment, in that three separate documents disclose the presence in Ms. Callaham of peritonitis and/or sepsis following surgery.  Notably, the conclusions these documents reach appears to be in accord with the conclusion of the "Final" Postmortem report from January 2011—sepsis due to peritonitis caused by a post-operative infection—and thus it is not clear what new or additional information that report provides which would have only then alerted Plaintiffs that they had a cause of action.

Even if the court were to accept as true Plaintiffs' allegations regarding Dr. Aldrich's misrepresentations, the alleged misrepresentations largely relate to the *omission* of information from the medical record regarding Dr. Aldrich's allegedly negligent care of Ms. Callaham.  In other words, Plaintiffs largely do not allege that Dr. Aldrich *added* information to the medical record that was *contrary to* the other available evidence of the cause of Ms. Callaham's death. It appears that the Complaint only specifically alleges two affirmative statements by Dr. Aldrich: 1) that Dr. Aldrich created a "factual account" concerning Ms. Callaham's care that falsely stated that Dr. Aldrich had a conversation with Linda Foster on October 5, 2008, wherein Dr. Aldrich told Ms. Foster to take Ms. Callaham back to the hospital; and 2) that Dr. Aldrich told Ms. Callaham's family members that Ms. Callaham's post-surgery complaints were "expected normal recovery symptoms."  Complaint, ¶¶ 19(a), 20(c).  Both alleged statements preceded both Ms. Callaham's death and the subsequent evidence of its cause, and thus it is not the case that these statements prevented Plaintiffs from discovering the existence and cause of an injury. Accordingly, the instant case is distinguishable from the cases Plaintiffs cite regarding discovery

14

of their injury. *Cf. Dearing v. United States*, 835 F.2d 226 (9th Cir. 1987); *Wherman v. United States*, 830 F.2d 1480 (8th Cir. 1987).

Based on the above, in the exercise of due diligence Plaintiffs knew or should have known of their claims at least by February of 2009. Because Plaintiffs did not present their claims to DHHS until February of 2012, their claims are barred under the FTCA's two-year statute of limitations. Thus, unless equitable tolling is applicable in this case, the court lacks subject matter jurisdiction over Plaintiffs' claims for wrongful death and survival.

### C. Equitable Tolling

As a final matter, Plaintiffs request that this court equitably toll the FTCA statute of limitations based on their allegations regarding Dr. Aldrich's misrepresentations. As explained above, it appears that the Fourth Circuit would allow equitable tolling in an appropriate circumstance. However, it is this court's opinion that this case fails to present facts which warrant equitable tolling.

As noted above, to invoke equitable tolling, Plaintiffs "must show that the 'defendant attempted to mislead [them] and that the plaintiff[s] reasonably relied on the misrepresentation by neglecting to file a timely charge.'" *Muth*, 1 F.3d at 251 (quoting *English*, 828 F.2d at 1049). Again, even if the court takes Plaintiffs' allegations regarding Dr. Aldrich's misrepresentations as true, the misrepresentations largely relate to the absence of information in the medical record, not deliberately misleading, affirmative statements. Moreover, the two, pre-death affirmative misrepresentations alleged are far outweighed by the ample, post-death evidence that Ms. Callaham died as a result of her medical treatment. Thus, to the extent the Plaintiffs relied on the misrepresentations in neglecting to present their claims in a timely manner, they did not act reasonably in doing so. And as the Supreme Court has noted, equitable tolling is not appropriate

where "the claimant failed to exercise due diligence in preserving his legal rights." *Irwin*, 498 U.S. at 96. Therefore, the court declines to equitably toll the statute of limitations in this case.

## V.    CONCLUSION

Defendant has moved to dismiss Plaintiffs' claims of wrongful death, survival, and misrepresentation for lack of subject matter jurisdiction under the two-year statute of limitations in the FTCA. As a threshold issue, the Fourth Circuit has stated that district courts should be mindful that they should not dismiss claims under Rule 12(b)(1) where the defendant has attacked as untrue a plaintiff's jurisdictional allegations and where the jurisdictional facts are intertwined with the merits of the plaintiff's claims. Upon inspection of the claims in this case, however, the court does not believe that intertwinement precludes dismissal under Rule 12(b)(1).

The primary jurisdictional issue the court must decide is the time at which Plaintiffs' claims accrued. Notably, claims for misrepresentation are excluded from the waiver of sovereign immunity under the FTCA, and thus the court can resolve the issue of claim accrual without having to address the misrepresentation claim. Because the jurisdictional facts are not intertwined with the merits of Plaintiffs' two remaining clams, survival and wrongful death, the court may dismiss these claims under Rule 12(b)(1) if it lacks subject matter jurisdiction.

In this regard, the court finds it does lack subject matter jurisdiction over Plaintiffs' wrongful death and survival claims. In particular, Plaintiffs knew of or could have discovered ample evidence that Ms. Callaham died as a result of her medical treatment at the latest by February of 2009, but they did not present their claims to DHHS until February of 2012. The January 2011 Final Report of Postmortem Examination, on which Plaintiffs rely, does not appear to add much, if any, information regarding the cause of Ms. Callaham's death to the information

16

of which Plaintiffs already were or could have been aware. Thus, Plaintiffs' claims accrued more than two years before they presented their claims to DHHS.

Moreover, the only specifically alleged, affirmative misrepresentations by Dr. Aldrich which may suggest Ms. Callaham's death was *not* due to her medical treatment precede both Ms. Callaham's death and the subsequent evidence of its cause. The other allegations of misrepresentations largely relate to the omission of information from the medical record. Because Plaintiffs cannot have reasonably relied on these misrepresentations in the face of two Coroner's reports and an Amended Death Certificate which clearly suggest that Ms. Callaham died as a result of her medical treatment, the court should not equitably toll the statute of limitations.

Accordingly, Defendant's motion to dismiss is hereby granted. Plaintiffs' claims are dismissed with prejudice.

IT IS SO ORDERED.

July 29, 2013　　　　　　　　　　　　　　　　Joseph F. Anderson, Jr.
Columbia, South Carolina　　　　　　　　　　United States District Judge